You may be seated. The clerk will call the next case. 3 15 0 7 1 0. In Ray, the marriage of Aaron Todd Eastburg at relief by James Lawson and Alicia Lynn Eastburg, a talent by Barney Olsen. Mr Olsen, you may proceed. Yes. Justice O'Brien, because you were here on the last case, I'd like to point out something that perhaps Justice Wright didn't realize. The lady that seated in the courtroom here, the two daughters, has no relationship to Mr Sperry. That's Miss Eastburg, now Condre, and her two daughters. None of them have any relation that Justice Wright seemed to imply. So perhaps you can convey that. Thank you. Okay. This case exists because the trial judge below did not follow the Illinois statutes with respect to the proper calculation of child support. I think Justice Judge Shiplet even acknowledged this deviation in his opinion on it. There's two issues on the appeal. How do you interpret Section 50583A and B, which requires that overwithholding be included in net income in determining child support? There was absolutely no evidence at the trial, as Mr Eastburg's counsel argued, that Miss Condre had additional income from a broker's license. That fact was pointed out to the court before he rendered his decision, but he ignored this fact. The first issue is how do you properly calculate child support? The statute's pretty clear on that issue. And when the statute is clear, the Illinois Supreme Court in CC says that the principal court, the role is that interpreting the statute to determine its meaning based upon what it says. It's not to carve out exceptions, exemptions, or anything else, because the judge may not like what the statute says. This concept was also reiterated in the Supreme Court case of AA. Plain language of the statute is the best indication of the legislator's intent, and that's what should be enforced. 50583 consistently says the net income means all the income received and only deducts the actual amount paid, not the arbitrary amount that a party withholds for his or her own reasons. Judge Shiplett even seemed to recognize this when he said that he thought that what Mr. Eastbrook did was not proper so far as determining net income. He ended up with a huge $2,000. When was net income set for purposes of maintenance or child support? When was that determined? It was determined on three different occasions. As my brief points out, during the course of these petitions to increase. But before the 2014 or 2015 tax refund? The 2014 tax refund received in 2015. Okay, so when was 2014 the support set? Sometime in 2000. The new child support of the 721 was set sometime prior to where we got into this issue that is before you today. I was pretty sure of that. I just wanted to know what year. It was based upon what was known prior to the filing of the 2014 tax return. So all of the income, if I understand your question Justice Smith, all of the income that Mr. Eastbrook had in 2014 was not known at the time that a new child support level was set. Okay. The over withholding didn't become apparent until we saw his tax return after it was filed in 2015. I know, but you determined how much support there was before a tax return was during 2014 when these proceedings started. And then it was, and then you determined that would continue until some other time. Until it was amended, right? Is that the way it works? Well, there wasn't ever any suggestion of an amendment in this particular case, but obviously the way the case drug out, it carried over into 2015. We became aware of the over withholding. We became aware of the fact that the over withholding had not been included in part of his net income. And that's why this case arose and we asked for 28% for the two girls as an additional child support based on what his over withholding had resulted in. And I think that's what the statute says. In June of 2015, that's when the trial court entered the order approving your stipulation, the party stipulation. That's correct. That was based upon known knowledge that didn't have anything to do with the over withheld $14,000 refund. It doesn't have anything to do with the refund, but it had something to do with the appropriate tax, the appropriate deductions, did it not? In other words, when you set the support at 721 on June 26, 2015, you had the total income you received, the gross income you received in 2014, did you not? I don't know if we had the gross. We knew what he had netted. Okay. But we didn't, we obviously did not know at that time about the 14239 refund. Okay. Let's step aside from the refund for a moment. Okay. Are you telling me you entered into a stipulated order in June of 2015 and didn't know what his income was? I'm telling you that that's what the two parties had agreed upon, yes. Okay. And just based on what then? What did you base that on? I don't know what I based it on or what the other lawyer, which was not Mr. Lawson, that was involved in the case based it on, but that was an agreed upon amount between the two individuals. Okay. So you entered that and that was retroactive to the time of filing the petition, is that correct? That is the way it normally applies, yes. That's what happened, right? Yes, sir. So you set the support at 721? Yes, sir. Okay. Retroactive to October. Now prior to that in 2009... That would have been October of 14, correct? Right. And prior to that, in 2005, and there was no request to modify that 605 until October of 2014? Correct. Okay. The new stipulated amount, which is 721, was retroactive for that date, correct? That is correct. Okay. Now how is it that under the divorce statute for the federal income tax refund, which was from the 2014 income, and the reason I'm asking that is you've established a new support figure at, based on what, you know, you assume was the statutory stuff that, you know, the basis for it, okay. That turned out to be wrong. And with, you know, which takes into consideration the appropriate gross amount, the appropriate deductions for the various things the statute allows you to deduct for, which is tax withholding and so forth. Well, you're correct. That assumes all that. Okay. So when that was agreed upon, how do you get back to the, you know, to get a tax refund that would predate October of 2014 or deviate from your agreed amount of the 721? Because the tax refund is about income from that prior year, correct? Tax refund is based upon what he over-withheld in calendar year 2014, $14,000. And by not properly taking that into account or not being able to do that at the time the parties made the stipulation, in essence, Judge Shiplet, by his ruling, makes a $14,000 gift to Aaron Eastberg. That's not right. That's additional income. Is there any claim of fraud here? No. I'm saying that Judge Shiplet was just wrong in his petition isn't filed until October of 2014. You can only go, even if you over-withheld, you can only go retroactive to the date of filing. So it would be for the pay period, for the over-withholding for the periods in October and November, I guess half of October, November and December. I disagree with you because it's obviously shown by what we put into our brief that this gentleman has over-withheld in all of his years. He gets monumental tax refunds. By not taking those tax refunds into account, he's depriving his children of the appropriate 28% of his real net income. I don't disagree at all that if there had been a petition for modification filed earlier, that they would be entitled to that. But we can't, unless it is somehow fraudulent. I don't know what the divorce said about what the allowable deductions from gross were. I mean, some divorce decrees are very specific about that. This one was not. It's just the difficult, the appropriate amount of federal, state, and the other things that are allowable to be deducted to revenue. Well, but you stipulated it to an amount, right? That is correct. And I assume you didn't pull a number out of thin air that you had his tax records in front of you. That is not necessary. W-2s or something, why would you stipulate without any evidence? That is what the two parties had agreed upon, that 721 was the, or 715, excuse me, was the amount to go up based upon her petition increase. Well, regardless of what somebody withholds, you can look at some of these W-2s and find out what the, on a, get a pretty close estimate of what the tax liability is going to be, regardless of what they choose to withhold. I understand that that is something that could be done. And without any fraud, you know. I think the fraud takes place when he overwithholds and doesn't disclose the actual tax that he's going to be paying until his 2014 tax return becomes known to us. And that's when we see the massive amount of overwithholding. Well, you agree with me that a tax, federal income tax refund is not income for tax purposes, right? I don't agree with you. You think it's, you, you. Oh, the refund? Yes, the refund shows that he overwithheld. Well, there's no law against overwithholding as long as the support is set upon the right amount, regardless of what the person withholds. It wasn't. 505A3 says that net income, it says that he only deducts the actual state and federal income taxes paid, not an arbitrary amount that he overwithholds. Well, then why did you stipulate to it? I, the parties stipulated to this. They had counsel? They had counsel. But the, I guess the. A lot of things happen retroactive to what your suggestion, Justice Smith. And that's why this case is where it is right now. That's what was presented to Judge Shiplet. Judge Shiplet recognized that he'd overwithheld and said that he thought that he, he was overwithholding. He, it didn't make any sense to leave the government with that kind of money at no interest. But he wasn't. Well, I do it every year because it's cheaper than a psychiatrist. So I don't have to write a check to him come April. And I've done it all my life. Because if I had to write a check for ten cents, I'd be so mad I didn't put me in a rubber room or something. So I do it all the time. And so as long, regardless of what this holding is, if you calculate the support based upon the right amount, with, the fact that he gets a refund, small, large, or somewhere in between, is irrelevant. You're presuming that the calculation was made on the right amount, and it wasn't. It's obvious now. But the calculation was made by the parties, not the court. And the parties agreed to it, and, and so it wasn't error on the court. And when you agree to something, you live with it. I, I don't think that's, I don't think that's, I don't think that's, I think, I'm not using the word fraud. I'm saying that Mr. Eastberg's pattern is that he consistently has over-withheld and thereby deprives his children of the proper child support amount based upon the real, what should really be deducted. See, I don't know if that assumption can, can really be held to be true. If you calculate the support properly, if, okay, and you calculate the support properly, it has, there's, it doesn't make a difference about how much you are, are withholding. What you look at is, you look at the gross income, you take the proper deductions, and with the proper, with the tax deduction would be based on what his tax rate is, whatever it would be for the annual income. You take that, you reach a, you get a figure, and then you stipulate, if you're reaching an agreement, on the child support, because you've taken the proper things. Now, in fact, if, in fact, if, if, in fact, that X number that you, you're getting to, the person pays that amount for child support, which is the proper amount, based on the proper calculations, but in fact, on his actual return, I mean, on his actual pay stub, he decides to take double what he should take off the thing. He's still paying for child support the right amount, even though he decides to take double off the, you know, for his tax. I don't think that's what section 505A3 intends, and I think the cases that I have cited in my brief indicate that the suggestion that you're making, Justice Carter, that everything's all right if he paid on the right amount. That $14,000 is additional income to him. Well, if he paid, if you take the calculation, and it doesn't, you know, unless he's, he's over, you know, overtaking what he should take, well, then you have to recalculate that back in, do the proper calculation for the, for the child support, and the fact that someone chooses to take more out, he's still paying the, the, the right child support. There's been no, there's been nothing misleading about it. I mean, people, there, there's, there is no provision to say that when you get divorced, you can't overwithheld, withhold your, your taxes. I disagree. Well, all the cases you cited are dealing with someone who's trying to claim that the net for purposes of establishing child support shouldn't include this amount of overpayment. Well, cases say, no, you can't do that, you've got to calculate it the right way. But, let me, let me try it this way. Is your argument that even if the, the support is based on a proper calculations of, of what the tax liability ought to be, if the, the payer then elects to overwithhold, that refund that he gets is, is. 28% of that refund should go to those children. Isn't that a, and, and you don't see that as a double whammy on the same money? No, because the refund is based upon, he's already paid this, what his child support was based on. But, this is extra money that he never included in any kind of calculations, and she's entitled, she and her children are entitled to that. As, as I said, if it were properly calculated, then it doesn't make any difference how we withhold. That's why we asked for 28% of the refund. That's, that's. Because. That's the proper amount of the refund. Because you're saying he didn't properly calculate. No. I think their questions were to clarify, to make sure that if it had been properly calculated, and they said, you know, listen, you should be paying $750 a week. And that's based on your proper withholding is $150. We're just going to, hypothetically. Anyway, Justice Carter and Justice Spitter saying is, then that may, that same individual could pay that $750, but then they could say, withhold $300, because I want a savings account. And you're, what you're, are you saying then, that if the child support was calculated correctly based on the withholding allowance of $150, and they got the child support based on that, that an individual then said, but now hold out an additional $150. After you take out my child support, after everything else, pull out another $150 to pay the taxes, so that I get something back at the end of the year. Are you saying then, that money, even though it's already been used to calculate child support, it would be like, let's say if he just got it in his paycheck then, and put it in a, I mean, how would it be different than just putting it into a savings account? I think, I think I've answered the question to both of these justices, and I'm going to try and answer it the same way to you. I think, I don't need an answer. I think that that's, it seemed like you were sort of misunderstanding. I, All I know is that historically, where I practice predominantly, if there's a refund, regardless of what it is, which is over and above the amount of his actual tax, that means he overwithheld. Judges award that percentage, and I think that's what the cases say, and I think that's what the statute intends, and that's what the statute says. But let me ask it in a different way then. In June of 2015, when the agreement was entered into to pay 721 semi-monthly, an increase of $116 from the prior setting in 09, okay? The 721, under your analysis on the pay stops that you received and all the information that you received, what was the appropriate amount that should have been entered at 28% under the pay stubs that he was given? I think that the number that was agreed upon by the parties, the 721, was based upon what we knew then. We didn't know that he was over withholding $14,000. You mean, you looked at information and you didn't know- I don't think I was involved in this discussion, but I'm thinking that in answering to your question, yes, I represented Ms. Condrey. But I don't think that they looked at a $14,000 refund as being- I'm not taking the pay stubs that you had or the information that you had. I'm just, I'm asking a simple question. In June of 2015, what was the proper amount at 28% under the statute that should have been taken semi-monthly? I think that they thought it was 721 was for the proper amount of child support. Well, what is it then? It would be 721 plus 28% of this massive over-withholding, in retrospect, yes. What would be the proper amount based on the stubs in June of 2015? I don't have those stubs with me, but I am sure that they thought 721 was the appropriate amount, Judge. Well, so if instead of over withholding, he had put that $14,000, he had not over withheld $14,000. If he'd withheld the proper amount. Let me finish my question. I'll let you have all the time you want to answer. If he had not over withheld $14,000, and he had taken this debt and put that money in the bank, then the next year, would you say, and let's assume, well, you virtually get no interest, you put it in the state, it's going to be at 0.01%. Would you say next year, wait a minute, he stuck money in the bank, I want 28% of that. That's not what the statute says. Would you want 28% of that? What's the difference where he puts that $14,000? Whether he lets the government keep an interest free, or whether he puts it in the bank? It's either properly calculated at the time it's agreed upon, or it isn't. I'm not sure if I understand your question, Justice Smith. I think that the issue is that this refund should have been added back into net income in order to determine a proper amount of child support. When that didn't occur, then 28% of the 14,239 is an additional proper amount that the mother and the children should receive. Let me see if it may be, if I can summarize your position. Any tax refund that a payer receives, if you receive a tax refund, whatever it is, that needs to be added back, and the payees are entitled to 28%. I think that's what the statute says, and that's my position, yes, Your Honor. Okay. We need to call time. Okay. Any other questions? No. I can address the rest of my argument in my reply break. Mr. Lawson? In June of 2015, what was the correct support amount at 28% based on the proper statutory deductions? $721. In June of 2015, I believe there has been some misstatements, Your Honors. With respect to, first, Mr. Olson and his client not having all of the information necessary to make the appropriate calculation of child support going forward, attached to Mr. Olson's brief is the summary of the tax returns and the cover page of the 2014 tax return that is part of the record in this case that was exchanged during discovery prior to hearing in 2015. So Mr. Olson and his client had all available information to calculate the child support in the spring of 2015 going forward relevant to the disposition of the October 10, 2014 petition to modify child support. For Mr. Olson to say that he was apparently not involved in the calculation of the child support to resolve the petition for modification of support is quite frankly incredulous. I personally was not involved in the underlying hearing. My partner, Dan Cordes, was the trial attorney. However, I have read the transcript of the proceeding and Mr. Olson was very much involved and stipulated to the income figures and had all relevant discovery to support that calculation of his own doing. That is only one misrepresentation of the record in this case, which I find quite frankly rather troubling. Even in oral argument today, Mr. Olson indicated that Judge Shiplett acknowledged a deviation in child support guidelines. I did not see that anywhere in the transcript of the reported proceedings in this case. Did Mr. Eastberg over-withhold in those taxes more than what is the statutory allowed amount? He over-withheld in excess of the federal statutory guidelines, yes, in multiple different years and had varying degrees of tax refunds. Yes, he did over-withhold. One of the initial questions that I believe it was Justice Carter had asked Mr. Olson is when was the child support determined, or perhaps it was you, Justice Schmidt. The child support prior to the 2014 tax year was determined based on 2009, the petition to modify child support from 2009. It's a December 28, 2009 order. Mr. Olson was involved in that proceeding as well, and again stipulated in 2009 to the calculation of Mr. Eastberg's income in 2009, and that established the child support at $605 bi-weekly. Was he over-withholding then? To my knowledge, no, but I have not personally seen any tax returns at that point. However, Mr. Olson performed the calculation, and given the discovery that occurred with respect to the 2014 petition, I'm assuming Mr. Olson also had the tax returns for 2007, 2008, and 2009 to resolve that petition. But he is the one that did the calculation in 2009, so presumably he followed the law and did it correctly with respect to tax withholdings. And I would say Mr. Olson did the calculation correctly for 2015, resulting in the $721 bi-weekly support. The child support is accurate. Does that add back in the amount that was being over-withheld? It depends on the way you look at it, Your Honor, because it is, as the Accolade Court states, two sides of the same coin. The way that the child support was calculated, presumably even by Mr. Olson, was looking at the 2014 tax return, so the parties had the benefit of the actual gross income, the actual taxes paid, which results in the actual net income. If you want to consider... Actual taxes paid. There isn't a box that says, this is the federal recommended amount, and this is what he paid over. This is exactly what he paid. So if you're going to calculate support that way, and you don't parcel those out, you're subtracting out all of those taxes. Well, doesn't the tax refund show the amount the government keeps? Yes, that there's an actual tax owed on the federal tax return, which the parties and counsel use in the support calculations so that it actually matches what was paid. It doesn't necessarily match the withholdings. And that would be, according to the Section 505, result in the proper tax withholdings. Now, you can actually look at it on the opposite side of the coin, using the phrase that the Accolade Court, if you would start with the net income, as opposed to the actual gross, you would have to add the tax refund back in, and it would get to the exact same figure. But you can't do it both ways, and that's essential what Mr. Olson is trying to do, but also taking into account multiple different tax years, which just doesn't make any sense at all, because the support is properly calculated for 2015, but he's trying to go back into 2014 and get a portion of the tax refund, and that is where the real issue in this case really doesn't have anything to do with the tax refund. It has to do with retroactivity of an increase in child support, and can that retroactivity predate the petition to modify child support? And Section 510 of the Dissolution of Marriage Act says explicitly, no. And for the 21 years I've been practicing, it has said, no. And I have specifically addressed in my brief, Section 510, that states the statute is explicit, you can't do it, and I would respectfully submit that Mr. Olson not actually addressing that argument in his reply brief or in his argument today is fatal to his position, because Section 510 is explicit. You cannot get a retroactive increase in child support prior to the date that you file a petition to modify support. If that was the case, Mr. Olson could very well be arguing for a portion of the 2013 tax refund for 2012 or all the way back to 2006 when the parties divorced, and quite frankly, in his brief, he even says that they could go back to 2013 or 2012, but they've decided not to. Well, they can't. There's just absolutely no way to do it. Another misstatement in the record is on page 4 of Ms. Condrey's reply brief. She specifically states that the trial court found that Aaron Eastberg had intentionally overwithheld to manipulate his income for child support determination purposes. There was no finding in the record, no finding by the trial court to support that, and no citation in the record provided by Mr. Olson. Ms. Condrey also states that the trial court found that Mr. Eastberg benefited from this tax refund when the children did not. There's no such finding in the record. Again, the real issue is retroactivity of child support, of an increase in child support, and the statute is clear. Ms. Condrey has ignored the law in that respect. Her only argument in that regard in her reply brief is the trial court has discretion. Well, the trial court does have the discretion to go retroactive to the date the petition is filed, in this case October 10, 2014, but there is zero discretion for a trial judge to go back beyond that, and the reason is obvious, is opening the floodgates of litigation because every divorced spouse would try and go back 10, 15 years to explore all sorts of financial issues that can't be done. Moving to the issue of the uncovered medical expenses not covered by insurance, that is an abusive discretion standard, and Mr. Eastberg, through counsel, presented a very simple presentation to the court. If you look at the disposable cash income of both parties, they're either equal, or Alicia Condrey might even have a little bit more income. If you look at Mr. Eastberg's roughly $101,000 income, you reduce by income taxes, you get that down to about $73,000. You take the $17,304 of child support, he's down to roughly $55,000 annual disposable income. If you look at the other side of the equation, Alicia Condrey earns approximately $52,000, pays approximately $10,000 income tax, so she's down to about $42,000. You add the $17,000 of child support that she receives, she's up to about $59,000 disposable income. Was it reasonable for the trial court to deny that each party should continue to pay for uncovered medical expenses on a 50-50 basis? Absolutely reasonable. Alicia Condrey probably has more disposable income than Mr. Eastberg. The abusive discretion standard, would any reasonable person agree with the trial court? Absolutely. So the trial court, I would respectfully submit, cannot be reversed for the second half of this appeal. Ultimately, Your Honors, I don't know how much time I have, but I think I'm almost done. I found it a little bit difficult to actually identify the issue after reading the initial brief in this matter because it looked pretty simple, yet kind of then went all over the board. But I decided not to file a petition for attorney fees because I like to take the high road. I would respectfully request leave and I will have to consult with my client of 10 or 14 days to discuss that with my client as to whether or not I file a petition for reimbursement of attorney fees for the appellate work based upon what I see as a baseless appeal and misrepresentations of the record in oral argument and in the briefs. So if that would please the court, I would request that time to make that decision. I would respectfully state that there is just no basis for this appeal and all aspects of the appeal should be denied. Thank you. Mr. Olsen has replied to address your request. Thank you, Your Honors. Mr. Olsen points out that he was not trial counsel. A lot of the argument that he has made in his testimony today is the same what I called smoke and mirrors approach in my reply brief that was presented to Judge Shipley. It doesn't make sense to add in child support to Alicia's when that's not income and it doesn't make sense to say that he gets to deduct that in trying to equalize these things. He makes 101 and she makes 52. That's what reality is. The suggestion of attorney's fees I think if Mr. Lawson chooses to file something like that we'll address it at that time. I think it's totally unwarranted. With respect to his argument as to the medical expenses I think that Judge Shipley just missed it again in buying the smoke and mirrors and not in finding this equation of almost equal incomes. 101 is double 52. Almost. I think that what happens is when you look at the cases that I cited in section 2 of my brief that deal with the increase. These children are older. They now have orthodontic expenses. Regal, your own case from 1993 says as children mature that constitutes a substantial change. That's what counsel and that's what this court ignored in saying that they're the same so there is no need for anything more. Getting back to the suggestion that somehow Ms. Eastberg and I were trying to take this case back into 2009 and even before. That's just ridiculous. This case deals with a request to increase that was filed in 2014. It took until 2015 to get anywhere with an increase and it didn't include the knowledge about what Mr. Eastberg had been over withholding. We've covered that ad nauseum in my initial questions or your questions and my attempted responses. I don't think you follow where I'm coming from and I guess I don't see where you're following what 503 says with respect to 505 838 says with respect to how you compute net income but I think so far as the medical expenses there is no doubt that as these children age their expenses go up. Medical expenses can be considered as either a part of child support but they usually aren't down in the Knox area or the Ninth Circuit area. They are considered as something that somebody pays over and above in some proportion. The logical way that most judges that I have appeared in front of do it is they'll look at the usually dad's making more than mom and if he's making $100 and she's making $50 that means he pays two-thirds of meds and she pays one-third. We didn't ask for him to pay all of it but we said hey things have gone up since the last time this thing was dealt with. Judge Shipplett went all the way back to the beginning and said I don't see where there's any big difference here from what the parties agreed upon in the initial divorce which was 50-50. That's a big difference from when these folks were divorced until 2015. I think that's why Judge Shipplett was wrong on the second thing. I already argued that I think Regal says that also so far as the medical expenses. I want to follow up on a question that Justice O'Brien asked you earlier dealing with the time period. The petition for a modification was filed in October 2014 and the stipulated amount that you paid to was made retroactive to that to the appropriate date. Child support only, yes, that's correct. Child support only. Prior to that time there was a 2009 order. That's correct. The 2009 order was the amount he was supposed to pay from his income. I can presume that that is correct. 2009 also did not address anything about med expenses. So there was an order entered in 2009 and so he paid that $605,000 all along, correct? Yes. When you were determining for the purposes of setting it in 2014-2015 for the 2015 order in June you were looking at his income. His income was $103,085. Right. Somebody had some figure close to that or something. That $103,000 included That's gross. That included tax withholding, everything. That was the gross amount. It didn't show us this $14,000 over withholding. It was a gross amount. Then calculations were made in June. Yes sir, we're back to the original argument. If you had calculations that he was making $103,000 and then somebody made some deductions to get to what the amount should be in the 721 but you're saying it's not double counting when you're looking at the... Not according to the statute, Justice Carter. So according to the statute, you can say $103,000 We made those calculations. There's a proper amount that comes off of that. That's on your tax return. So then add an additional $14,000. The $14,000 has to be added back into his income then you take out the proper amount it's that line item that somebody asked about here on the tax return and that's the proper amount. That results in more net income, hence we get 28% of the $14,000 that he over withheld and it has nothing to do with your savings account at all. Dumping all of that into his savings account. He still was over withholding during the year of all of 14 to get to his taxes were X. The refund represents what he over paid and that's where we say we're entitled to 28% of that dollar. And that over withhold also goes on to his ability to pay a greater amount of the uninsured medical expenses. You can't look at a W-2 and regardless of what the person is actually withholding figure out pretty closely what the withholding ought to be. I do not have a CTA and I do not have that accounting knowledge but I know what you're suggesting that perhaps I might have but I don't. Well, if we were to take the attached 2014 tax return and you take the gross You've got the tax return in front of you. You take the gross income, the $103,000 and you see the deductions, the automized deductions and you see the tax that the total tax that the person had to pay. You have that in front of you. I don't recall that number. That was like $14,000. So when you take the statutory deductions and you deduct the 3 plus something for state tax, you deduct the  Don't you get to, and you take the other, it appears the other deductions, don't you get something like $721,000? No. You don't? No. Because you're giving him the benefit of this gift of the $14,000. I'm saying you take his actual tax return in 2014. If his tax return was 100% accurate, Justice Carter, there would be zero refund. His taxes were subtract his taxes the total tax was $6,983. That's what he paid. And the 14 represents the amount he overwithheld. That means we get 28% of that overwithholding. But I'm saying if you deduct from the total amount and deduct the actual tax you paid, don't you get something close to the $721,000? Did you take out the other deductions? No. I don't have the numbers right in front of me, but 28% of $14,000 is I didn't bring my phone in. It's a larger amount. It's like $3,000 and some odd dollars. And that is definitely something that should have been part of $721,000. But it wasn't because the overwithholding occurs all during the year. Okay? And then he figures out his tax return and he gets whatever his proper deductions are exemptions, etc. And he's got $14,000 left over. Did you have that tax return in front of you when you agreed the amount? I don't believe we did. I don't know when that was filed. As I stand here I cannot answer your question 100% accurately. I don't believe we did. Otherwise the $14,000 would not have been an issue at trial. This form shows it was dated February 18, 2015. I don't know when we got that, Justice Carter. I wish I could answer both of your questions. There was a lot of delay through Mr. Eastberg's counsel getting this case to trial. And some of that, I think, results in why we're here today. Are you doubting he should have paid $6,983 in taxes? Nope. That's what somebody calculated was the proper amount. What I'm saying is we get 28% of $14,000 in addition. Plus, we ought to get a bigger chunk out of him for the increased medical expenses that were presented to Judge Strickland, which he just totally ignored. Based on the differential of income. That concludes me. And you are, too. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. And right now we will stand in a brief recess for a moment.